My name is James Lopesens, and I represent the appellants to Wilbur's in this matter. We should warn you in advance, the acoustics are poor, and the microphone doesn't pick up much, and I'm sure you want us to hear your argument. Okay. If you're not hearing me, I'll do my best, but if you're not hearing me, say so, and I'll speak louder. This is an appeal from a 12 v. 6 dismissal entered in the district court. The district court dismissed this case, believing that it was barred by the Tax Injunction Act. After the district court made its ruling, the United States Supreme Court decided the case of Hibbs v. Winn. I submit that it is very clear now that this case is not barred by the Tax Injunction Act for two separate reasons. First of all, it's just not covered by the statute because it's not seeking to enjoin the collection of a tax levied under State law. In fact, it's not seeking to enjoin the collection of any tax. It's seeking to declare unconstitutional statutes which authorize the State and the tribe to enter into compacts and to declare invalid the contract that was entered into. But it's a – to the extent that there's any tax involved, it's a tribal tax, not a State tax, and it just doesn't apply. If you're correct, the tribe won't be able to collect its tax. Is that right? No, that's not right. The tribe can collect the tax? If I collect, the statutes will be held unconstitutional and the contract will be held unconstitutional, but the tribe can continue to do whatever it wants. Well, why isn't the tribe a necessary and indispensable party here to this? I don't think it is. And I can go to that immediately, if you like. I don't think it is. And, of course, the district court didn't ever reach that issue. But your task – and I understand they can raise this now because they allege that it's an independent ground upon which the district court can be affirmed. Well, there's a contract now. There is a contract now. And the district judge decided they weren't an indispensable party for what reason? No, the district court judge did not address that issue. The district court judge just addressed the tax injunction issue, and that's it. Okay. But the Attorney General argues he can affirm it. You're trying to set aside a contract that – your effort is to set aside a contract of one of the parties is not in the case. Why doesn't that make that party an indispensable party? Because, as this Court recognized in Washington v. Daley, a party that is present has virtually identical interests in the case and can adequately represent that party, and, therefore, the first step is not even met. They're not even a necessary party because the State of Washington is a party to this case, is here to defend their interests. The governor is here. And, in fact, the Washington – Governors come and go, and sometimes we can't even find out which one won the election. Why should the tribe, who has a long-term interest, be said to be protected by the government when the government can change its mind whenever it wants to? Why would that be necessarily so? The government cannot change its mind as to whether or not there's a statute on the books which authorizes them to enter into this contract. But it can remove the statute. There's lots of things that the government can't do. The governor can't remove the statute. Pardon? The governor cannot remove the statute. The legislature can. The legislature could. And the governor cannot repudiate a contract that he's entered into just because he feels like it. And there's no indication that the governor has any indication of doing that. And, in fact, in this case, the contract says that they entered into over and over and over again. It says the parties believe that their mutual interests are advanced here. The parties are entering. There's been some antagonism between the tribe and the state over this tax. Isn't that correct? No, not over this tribal tax. I'm not sure. Well, over the collection of a cigarette tax. In previous decades. What led the legislature to adopt these particular measures? I don't know whether I could offer speculation. I could say that the legislature. Let me ask you this. Before these measures were adopted, these statutes were adopted by the legislature, what was sort of the status of selling cigarettes on the reservation to non-Indians? To non-Indians. Yes. That was subject to a Washington State tax. And did the tribe have to collect that tax? The tribe didn't have to collect it, no. The state had to collect it. Did the retailers on the tribe within the territorial limits of the tribe have to collect the tax? Yes. Was there some dispute about that at some point along the way? There was for many decades. And then eventually the United States Supreme Court pretty much resolved it by saying this is the line. If an Indian retailer sells to a tribal Indian, the state can't collect any tax on that. If an Indian retailer sells to a non-Indian, the state can collect it. And once those lines were drawn, I don't believe that there's been litigation in quite some time on that. But you're quite correct that there was a controversy for a while. You know, in the. . . Why should we assume now that the state wants to, you know, defend the interest of the tribe in maintaining this particular arrangement? I don't think you should assume anything. You should require the state of Washington to carry its burden of proving that the governor is not an adequate person to represent the tribe's interest because the burden of proof is on them. And in this case, they have not stood up and said anything about why they can't represent the tribe. And it's their burden. I mean, for them to carry their burden, it would be necessary for them to come in here and say, Governor Locke doesn't think he can do this because whatever, whatever reason. And there is nothing that they've ever said. Their contract says we have a mutual interest in doing this. We both want to do this. We both think it will benefit our respective governments. How can they carry their burden of proving that the governor can't adequately represent the tribe? In that situation, they would have to stand up here and say, You can't trust me, the governor, to defend this contract. Well, you know, I don't know much of the history about this. You know, we didn't get a lot of history, the historical detail of how this all came about. It's not reflected in the papers, but it looks as though there was some period of negotiation before the tribes arrived at these compacts. Isn't that correct? I have no idea. You have no idea? I have no idea. None. Okay. I couldn't tell you. You say we should trust the state to carry out its duties and that the state can adequately represent the tribe. And you rely on cases, but those cases, as far as I could read them, and I think I read every one you cited, the federal government was involved with the tribe. And, of course, the federal government has a responsibility, a trust responsibility. The state does not have any trust responsibility. That's true. Do you have any cases in which the state was considered to be an adequate representative of the tribe, similar to the cases you cited where the federal government was considered to be an adequate representative of the tribe? Not exactly, no. I don't have a case exactly like the one you're asking for. What I do have is the case of Morongo Band, which is not a case involving a state government. The issue there is not whether the state is an adequate party to represent someone else's interests, but it is a case where there is a contract between two people and one of the persons is absent and one of the persons is present. The person present said, you shouldn't have been able to bring this lawsuit against me because of this absent indispensable party, who is also a party to the contract. And this court said, you're a party to the contract. You have the exact same contractual interest in defending this contract and asserting any rights under it that the absent party has. And so what case was this? Morongo Band of Mission Indians v. Rose, 34-5-3-901. And what I did point out to you in the briefs is that there was no trust relationship between the contracting parties in that case, and it didn't seem to matter to this court. A trust relationship is not a prerequisite. And if I can go back for just one moment, Judge Wallace, I just want to say again, I quibble, I guess, with your saying, why should I convince you that the State of Washington can be trusted? That is not the burden. The State of Washington has the burden of proving that the State of Washington cannot be trusted. And that's where the burden lies in this case. Let me ask you a practical question. The Wilbers, if you succeed, the Wilbers are required, or even if you don't succeed, as of now, the Wilbers are required to collect the State tax on sales to non-Indians. Is that right? If I don't succeed. Forget the premise. Are the Wilbers required to collect State tax on sales to non-Indians? Well, right now, no, right now, because the State has promised in this contract not to collect that tax. How about before the contract? Before, yes. Did they, in fact, collect the tax? Well, did, in fact, the Wilbers collect the tax? I could have no reason to believe they didn't. Wasn't there a legislative dispute about whether or not? I don't know, but I have no reason to believe they didn't. What's it to them whether they collect the tax for the State or the tax for the tribe? I mean, what's going on here? What's going on is that before, because they couldn't collect, the State could not impose the tax on sales to Indians, there was a price differential so that it made it advantageous for a tribal Indian to go buy from the Wilbers as opposed to the local whatever. So they got a lot of sales that way that they wouldn't otherwise get. Now that the tribe has imposed a tax which is exactly equal to what the State would impose on a non-Indian, the tribe is imposing on an Indian, there's no price differential on those. Customers no longer have an incentive to make a special trip to the Wilbers post, and so they lose those sales. The sales to Indians? Yes. Okay. I was just going to say, is it clear that prior to this agreement that the tribes had to collect the tax from non-Indians for sales on the reservation? Yeah, I think so. I'm sorry, did you say the tribes? I mean, the retail. I'm sorry, the retail, the Wilbers here. That was totally clear, and I've never disagreed with the State about that. Okay. I mean, that's settled. But in the Washington v. Daley case, it is different in the sense that the United States was the present party, but the State of Washington convinced this Court to reverse a 19B dismissal because the United States was an adequate party to represent the absent tribe's interests, and now the shoe's on the other foot, and unless they convince you that they can't be trusted to represent the tribe's interests, this is a specious argument. If they do convince you of that, it only satisfies the first part of they're a necessary party, not the second part whether they're an indispensable party. I have advanced several reasons why I don't think they're an indispensable party, one of which is the application of the public rights exception. They rely on the case of American Greyhound Racing, and I submit that that case is extremely distinguishable. That was a case where non-Indian plaintiffs were trying to eliminate competition from Indian casino owners, and they were not asserting public rights or trying to vindicate important public rights. They were trying to eliminate competition. In this case, the Wilbers are trying to vindicate their treaty rights under the Treaty of Point Elliot. Their federal constitutional rights under the Indian Commerce Clause are their state constitutional rights under Article 286, Section 2. I don't think it is comparable to the American Greyhound case in any way, and really what the state of Washington is trying to do in this case is do an end run around the Indian Commerce Clause and the treaty and the state constitution. What they cannot do directly, they have so far successfully done indirectly, by essentially renting the Indian Tribal Council legislature. They've said, we can't pass this, but we'll give you something if you pass this, and we think that's an egregious violation of all state federal constitutional rights and the treaty. If you were to – There was nothing that compelled the tribe to adopt, to enter into the Indian Compact, was there? No. It's like anything else, though. The state says, here's what we'll offer you if you'll do what we want, and that's what the Indian Commerce Clause was set up to prevent. You may not do that unless Congress has consented. You may not enter into these arrangements with tribes, or they might give up Manhattan for $24. I mean, that's the historical background to the whole notion of states do not treat with Indian tribes. If you were to reach the opposite conclusion that they are an indispensable party, there would be no alternative forum in which this suit could be brought. I'm sorry. You're letting your voice drop. Sorry. If you were to reach the opposite conclusion that they are an indispensable party and that this suit had to be dismissed, then there would be no place this suit could be brought by the Wilburs. That's what American Greyhound holds, that when you have an independent nation like a tribe, this is going to happen. I mean, it's unfortunate. That is true, and I have essentially two things to say to that. One is that American Greyhound and virtually no other case that I can see in the country has ever considered the Petition Clause argument, which I have advanced. And so I think that's an issue of first impression. And I have steered you to the decisions of the Wisconsin Supreme Court and the New York Supreme Court. They also did not mention the Petition Clause, but they came to an opposite conclusion than the Ninth Circuit comes to. They came to a conclusion similar to the one the Seventh Circuit has come to. Which do you think is going to guide our panel? Well, I understand that you're bound by a panel decision which is on all fours, but it's not on all fours when you consider the Petition Clause. You would distinguish American Greyhound on the basis of your Petition Argument? That's one reason I would distinguish it. And the other reason I would distinguish it is if I can find the exact language. This Court said in American Greyhound that there was a – I think that's what Judge Pius was getting at, that there was a history of conflict between the governor of Arizona in that case and the tribes, and they had taken opposite positions on the issue, which I can't remember what it was. And therefore, on the facts of that case, it's distinguishable because you can't trust the governor of Arizona to represent the tribes in this case. I would also distinguish it on the Petition Clause argument, which no court has ever addressed, but that this Court will, I'm sure. And I just ask you to consider the ramifications. If you rule for the State of Washington here, no court in the country can ever address whether there's a violation of Federal constitutional rights going on here, ever. What do you think of the argument that's raised against that, that you can always go to the tribal court? Well, I think that's a pretty specious argument. We can't go to the tribal court because the State of Washington has – I'm sorry. You let your voice drop again, so I didn't get anything after because. I'm sorry. I'm trying to hurry because I'm already over my time. But the State has not consented to suit in tribal court, so we cannot sue the State in tribal court. So – But you could sue the tribe in tribal court, petitioning them to give their consent – We could sue – Allowing them to be – to come into this case as a party. We could sue the tribe in tribal court to ask them to consent to come into this case? I'm asking you whether you could bring a lawsuit against the tribe in the tribal court requesting that – or directing that the tribe give their consent to come into this case as a party. We could always ask the tribe if they would consent. We don't need to file a lawsuit to do that. The tribe has refused to consent. And, in fact, what they've done in this case is they've filed a brief saying we're over here on the sideline. We're not in this case. We're not going to get into this case. And we agree with the State that you can't touch us. So – Well, I was just asking you to respond to the argument made by the opposition that you have the option of going to tribal court. Well, I believe the argument they made was we have the option of suing the State of Washington defendants and Governor Locke in tribal court, which is a specious argument because – I think they're – I understood their suggestion to be that you should sue the tribe in tribal court and you possibly could get a declaration that the tribe's consent or participation in this compact is invalid and have the tribe – the tribal court declare it invalid. That sounds pretty – But, you know, this contract comes up for renewal every – Every year, so – If you sued the tribe in tribal court, would the State be an indispensable party in that case? The State might make that argument. But, you know, the bottom line is the tribal court has no power to declare the RCW as unconstitutional. I mean, we can't get that relief there. We can't get them to enjoin a governor from doing something. Can the tribal court issue an injunction? I believe they can issue an injunction, but they have to have jurisdiction over the people they issue it against. And they can't issue an injunction against the governor of Washington. No, no. I'm not saying the governor wants it. They have jurisdiction over the tribe. Yes. So there's a possibility at least, if the argument of the opposition is correct, that you could bring a declaratory relief action directing the tribe to consent to this other suit. But what legal argument would I make that they are compelled to consent? I'm just exploring – There's no – You said there's no way in the world this can be solved. I'm trying to figure out if the other side has the answer. I'm just asking for your response. I don't think they have – I don't think there's any way that you can make a legal argument that the tribe must consent to being sued in Federal court. That would go against the constitutional right of a tribe as a sovereign entity not to consent to be sued there. I have 29 seconds left. Okay. We'll save them for you. Thank you. Good morning. Good morning. May it please the Court. My name is David Hankins. I'm an assistant attorney general, and I represent the governor, the state of Washington, and the Department of Revenue, and the named officials in this case. Members of the Court, this is ultimately an internal dispute between tribal members and the Swinomish tribe on managing cigarette sales. On the reservation, the district court properly dismissed the plaintiff's complaint, and his decision should be affirmed. And his decision can be affirmed on a number of bases, and those range from six of them primarily, the Eleventh Amendment, standing, mootness, the Tax Injunction Act, failing to name a necessary and indispensable party, and, of course, failing to state the claim upon which relief can be granted. Does your case rise or fall on the analysis of the district judge that this is in lieu of a state tax, and, therefore, it is a state tax? No, it doesn't. Part of the problem of one of the reasons I handed out to the panel just the prayer for relief from the excerpt of record is that they are challenging, based on their prayer for relief, more than just this tribal tax. They are challenging the state cigarette taxes as well, the collection of that. So the Tax Injunction Act would bar those claims. As to those claims where they talk about the tribal tax, we believe that's where a number of issues would come into play, one of them being the necessary and indispensable party. If the Tax Injunction Act will let any claim get through, then the district court was wrong. He's partially wrong. And I'm just wondering about his in lieu analysis. It strikes me that that might be inconsistent with some of the cases that were cited by the opposition. I think the problem with that is if you look at it two ways, you can either look at it as is it a state tax, and the problem with that, I think, is that if you look at the language based on the statute and the contract talking about in lieu of and the fact that the state will not impose its tax, then it is what it is and that is a tribal tax and not a state tax. And then you have the problem of how do you reconcile that with the Tax Injunction Act. Conversely, you could look at it as the district court judged it, which is to say that state tax is always out there. It is imposed. It's like the penumbra, a ghost, if you will. Suppose we disagree with the analysis of the district court that the in lieu of, really we can't sustain under the law of the United States. Where does that leave you on this case? Is there some other analysis that you have that might buttress up the in lieu of analysis? I believe so, Your Honor. I think that with your left with that it's not precluded based on that it's not a state tax, then you're left with it is a tribal tax. And if it is a tribal tax, then the tribe has a direct impact and an interest in being here to defend that tax because that tax is raised based on a contract. That's your indispensable party. That's correct. But come back just with the tax itself. The tribe itself is an independent nation, and so if the in lieu of issue analysis doesn't hold, what analysis would you rely on, if any, to sustain the position of the district court that the Tax Injunction Act forbids this claim? I couldn't. If the in lieu of act would fail, then the Tax Injunction Act would not bar that because it would not be a state tax if you said the in lieu of was a replacement of that tax. Okay. That was what I thought, and thank you for being so frank. So what's the best case that you have that the district judge was correct in his in lieu of analysis? The best, well, the problem here is that the judge first started out, the district court first started out with the necessary and indispensable party, but then stopped and just said, well, because the contract hasn't been entered into yet, then I'm not going to reach out because I don't find them a necessary party. Well, the court really erred because you can find a necessary party without just necessarily having a contract signed. There was all that was left was for the tribe had already gotten approval. All that was left was really the performer of the governor signing off. These contracts were negotiated on behalf of the governor through the Department of Revenue. And it's signed now. And it is signed now, so we have a contract. And that's ultimately the problem here is that I think the court, if you looked at his decision, he put in a footnote that, you know, even if I didn't get there, I do think that there is a problem with standing. And I think I could rule on the basis that these folks don't have standing to challenge that. Wasn't it in fact signed before he made his ruling? Yes, it was. And we didn't notify him because I didn't find out about it until afterwards. But it was signed before he issued his decision. But the court found that in a footnote that said, you know, if I didn't even get to the necessary and indispensable party, I could dismiss us on standing. But then he addressed the Tax Injunction Act. I do want to address some of the things you've heard today to clarify some of those. Because, first of all, this is a contract. So with a contract, you have two parties. And what's fundamentally missing here is a party that is to that contract. The tribe does not have to enter into this compact. This was a state statute that was passed, and it was an incentive for the tribes. If the tribe didn't want to enter into it, they don't have to do that. But the tribe wanted to do that, and that's what they did. And they entered into that compact. So by entering into that compact, you have a tribe that is saying, this is how we want to govern our internal affairs. Now, what's key to this is that I want to correct something that was told to you this morning, and that is take away the compact for a minute. What was the state of the law? Well, the state of the law was that tribes required their retailers on their reservations to collect state taxes, including the sales and use tax, from non-Indians and non-members. Tribal members, as this court recognized in a Yakama nation, is exempt. They did not have to pay any state tax. So if they went to a retailer, they could get their cigarettes free. It's called the allocation number. They are exempt. There's no state taxes. So this issue that counsel raises that there is now this economic burden because tribal members would now have to pay a tax, well, that's not correct. Before this compact, they didn't pay a tax. But now they have to pay a tax, and he says that's not right. But the key distinction here is the state can't impose that tax on the tribal members, but the tribe can decide to do that, and that's exactly what's happened here. And if the tribe can do that, then the tribe becomes a necessary and indispensable party because this is within their own internal affairs. If they want to impose a tribal tax on their people, they can do that, and they should be able to do that. But to tell them that they can't come and defend that right, that is what impairs and practically impairs their ability. Now, can the state adequately represent them? Well, I submit to you the answer is no for two reasons. One is the cases that counsel cites all relate to the Federal Government. Those cases relate completely to the Federal Government having a trustee responsibility with the tribe. So the state doesn't have that same interest. And secondly, we have a contract. Before you leave second to get second, Lee, come back to firstly. When I pressed that question to your adversary, he cited to me United States of America, Enri Moronga Band of Indians versus Rose. And I've looked that case over, and I think I know what it stands for, but I'd like to have you tell me your view of whether or not this buttresses his argument that you don't need the Indian tribe to be involved. I think what counsel forgets is that Enri Moronga, the party that was dismissed, there was two of them. They were already previously dismissed. So the court said in the case, however, the procedural history is such that it is inappropriate for one defendant to attempt to champion an absent party's interest. Miller was originally a defendant in the action, but he and the band stipulated to his dismissal shortly after this court's resolution of the first appeal. Therefore, Miller's voluntary dismissal indicates that Miller himself did not feel that it was necessarily in his interest to remain a party in this action. Miller was the operator? Yes. So I think this is clearly distinguishable that even from the – I don't think this court really wrestled with this issue that counsel raises is can you have a state adequately represent the tribe's interest. I think the court said, hey, look, this guy was already dismissed. So clearly he didn't have an interest in there. And so they couldn't represent them. As to the second issue, there is a contract. And as any contract, you have two parties that could have differing views as to the import or interpretation of that contract. So for us to come before the court and say that we can adequately represent the tribe's interest, that's not correct. We both, as two sovereign nations, two sovereign entities, have an interest in representing separately our interests. And those may conflict. What counsel says, even in his reply brief, is that what the Wilbers seek is a judicial declaration that a contract between the state and tribe is illegal. That's what they're seeking. I mean, if you boil it down to the fundamental nub of it, it is they don't like the fact of the contract. And if they don't like the contract, they can go before the tribe. And I offered they could go before tribal court. They could talk about the interest that the tribe entered into the contract. That's their remedy if they want to talk about their dissatisfaction of why the tribe entered into it. But let's take the flip side, because I know the court's going to be interested in that, and that is what about the state statutes? And that's where those two cases that counsel cites to you are different. That's the Wisconsin case in Saratoga from New York. Why are those cases different? Because in those cases the party's challenging it. They were challenging the underlying authority of the governor to enter into those agreements. And it was appropriate in state court because they said this governor did not have that authority to enter into those agreements. And both of those cases are limited to that. That's not the issue here. They are trying to gin up, if you will, some kind of argument as to what the state statute violates. The state statute was appropriately considered and passed by the state legislature. They provided the governor the authority. The state wanted to come up with a creative way to avoid further enforcement actions of tribes, of retailers on tribal reservations not collecting the state taxes. And here's one that they came up with and said if the tribe enters into an agreement with the state, they can impose a tribal tax in lieu of a state tax, and that tax can go back to the tribe for essential government services, fire, law enforcement, utilities, sidewalks, that type of function. So that was a creative way to avoid this problem. There's no cause of action to say how that violates the Commerce Clause. The Indian trader statute that they cite or the Indian Commerce Clause, this court stated in Burlington Northern v. Blackfeet that that only relates to Congress's authority for authorizing some kind of congressional action over the tribe's commerce activity. It doesn't say that the commerce activity is violated. All the state is saying is that we won't require you to impose our state tax if you impose a tribal tax. Now, the reason they don't do both is pretty clear. Clearly, the tribe does not have an interest in seeing that its tribal retailers or retailers on its reservation would have an economic disadvantage, because unlike in the state of Washington, outside the reservation, retailers are only subject to one sovereign entity, the state, in imposing a tax. So you only have one tax outside the reservation. If you go on the reservation, it doesn't seem that they would have any economic incentive if you have two separate taxes. You'd have the tribal tax and the state tax. So there would be no incentive, economic practicality for the tribe to enter into any agreement unless somebody says, look, you only really have one tax. And so that's why the tribe's in there. So I also take exception to the fact that we have to prove that we're unreliable. The state's not going to come before you and say that based on the burden of necessary and indispensable party that we are unreliable to represent the tribe. That's not the issue. The issue has to deal with sovereignty. We cannot represent the tribe's sovereign interest. It has nothing to do with the fact that we can't represent them. It has to do with the sovereignty nation. So that's why if you go through the prongs of the necessary and indispensable party, we think you'll find that the court could have dismissed on that basis. I also want to address this issue as to petition for redress for grievance. There's nothing that they still have an ability to petition for a grievance, and that's before the tribal court. So that issue, I think, is resolved in that respect. And so that issue of this court is already considered in whole to say if you have a sovereignty, if you're going against the sovereign nation, I'm sorry, but if the alternative form doesn't exist because you sued as sovereign, there's no remedy for that. But this court also recognized that it balances those four factors. The court just didn't say, okay, in sovereignty, if we get to sovereignty, the case is over. They said they'd still balance those. And we think if you balance those, you'll find that those cases uphold that this should have been dismissed. So if you go through the complaint of their prayer for relief, they've already admitted that the state of Washington should be dismissed for the 11th Amendment grounds. So all you're left with then is just the officials. And then you have the issue of standing, whether they can challenge that. And I think when you go through it, you'll find that they don't. And the Tax Injunction Act relating to any of the paragraphs that contain cigarette taxes. Don't be fooled by this complaint. This complaint is broader than just the tribal tax. The Wilbers are seeking to see if they can get this court to under the radar if any other cigarette taxes can be stricken. And that's why the Tax Injunction Act would bar those specific claims. We think there are sufficient bases that this court can find based on necessary and indispensable for the party, the 11th Amendment, standing, mootness, the Tax Injunction Act, and failing to state a claim. As just one example for failing to state a claim, they have challenged the fact that on military instrumentalities, federal instrumentalities, that the state can't impose the tax and that's not fair. Well, this court has already considered that in U.S. v. Baker and held that you're right. You state have no authority to impose a tax on federal instrumentalities on the military reservations. So there is a claim that's failed as an example of failing to state a claim. So by the time you boil this down, there is no case that they have that should be here in federal court. Therefore, we ask that you affirm the dismissal of the district court. Thank you. Is it bothering you that essentially, like Greyhound, we're ruling that the plaintiff really has no place to go practically to solve this problem? Is that bothersome? Usually, you know, we have all these things in the cases, any time there's a right, there must be an ability to exercise the right. Is that, should that be a concern to us? I think you can be concerned, but the cases clearly reflect two-prong analysis. We could take the general approach from Hull that you have another sovereign entity, therefore there's no alternative form. And the court in Hull said that is, it's unfortunate, but that's because you have two sovereign nations, so you can't sue within federal court. However, I think you don't have to reach that issue in that respect. I do think there is a remedy, and that is because they are ultimately upset, not because the state passed a statute that authorized this. What they're upset with is that the tribe entered into this contract with the state. So they do have a remedy. They can go before tribal court. They may not have to bring the state in there, but they can go before the tribal court. They have another alternative form. They can go before their political process, the tribal council, and they can talk to them about why they disagree with what the tribe is doing. So there is a form that they can go to and seek a remedy of what they're upset with. But ultimately, I think they're upset that the tribe made a decision that it wants another avenue of revenue, that it can build and help its tribe. And that's ultimately, that's a decision that the tribe can make, and they need to seek that relief from the tribe. Thank you very much, Mr. Hankins. Well, since you had about a half a minute left. Thank you. I take issue with the statement that they do not have to prove that the governor cannot be relied on to adequately defend the tribe's interests. That is well established. Cases like the Matara case, which I cited, say the burden of proof is on them to prove they're a necessary and indispensable party, which means the burden of proof is on them to show that as a practical matter, the governor cannot adequately represent them. In this case, the contract contains this language. Whereas the mutual interests of the Swinomish tribe and the State of Washington brought these two governments together to pursue their common interests, they're doing this. Now, all they have said is we don't have a trust relationship, which is certainly true. But what I have said is they have a contractual relationship, and they've made no showing as to why that's not adequate. And the tribe thinks it's adequate. The tribe knows all about this case, and they file papers in court saying we think the state is right and they're doing a great job. So they haven't carried their burden. Thank you.
judges: Wallace, Silverman, Paez